Kan v. Yale Good morning, Your Honors. My name is Cameron Atkinson, and I represent the plaintiff appellant Asaifullah Khan. I'd like to reserve two minutes for rebuttal, please. This case, thank you, Your Honor. This case requires this court, and it requires the district court, to make an important state policy decision that no Connecticut appellate court has ever opined on, much less considered, and that is whether quasi-judicial immunity can apply in a private university's Title IX proceeding. And as the Connecticut appellate courts have outlined repeatedly, the extension of quasi-judicial immunity to any sort of proceeding or any private proceeding, specifically in the arbitration context, is a very important public policy choice under Connecticut law. And the fact that there was no controlling Connecticut appellate authority, and the district court acknowledged that in its decision, but then relied on a Connecticut trial court decision, raises serious questions under the Erie Doctrine as to whether the district court substituted its judgment, its own perception, of what Connecticut policy should be in the place of what a Connecticut appellate court's decision would be on. Our position is that the extension of quasi-judicial immunity to a proceeding in which there is no state actor at all in any form whatsoever is such a leap from the Connecticut Supreme Court's precedence and the Connecticut appellate court's precedence that it would require direct consideration of the issue in order to be consistent with the Erie Doctrine. So for that reason, on that ground, that's the main ground we rest our argument that the district court's decision was wrong. And we've asked this Court, obviously, to certify the question to the Connecticut Supreme Court for further review, because this question is indispensable to this case. We do not dispute that there's a good-faith basis on behalf of Jane Doe for raising it. We just would like it decided in accordance with Connecticut law as required by the Erie Doctrine. However, if this Court does choose to reach the question itself, our position is that Title IX proceedings are strictly between private parties. They do not involve state action at all unless a state university is in play, and in which case our position would be that whatever disciplinary council that a public university sets up is essentially functioning as a state administrative body. Again, the decisions from the Connecticut appellate courts, the Connecticut Supreme Court that have applied quasi-judicial immunity to proceedings between private actors, or in terms of a public employee interacting with the state as in the context of the employer-employee distinction, have all been predicated around arbitration, which is a binding judgment. in the educational environment, and these hearings support that practice. And Connecticut general statutes also express a policy in favor of that Title IX policy. Why isn't that enough of a public interest in these proceedings to the extent that you're saying that there's a public-private divide that applies here, that we should consider the interest in these two statutes? There are several reasons, Your Honor. First, Congress can attach whatever conditions that it wants to the allocation of federal money, as it did under Title IX. That does not give Congress, however, the authority to convert these sort of proceedings into quasi-judicial proceedings. It, in fact, did not do that. Federal courts do not reach the merits of a Title IX determination. They don't enforce a Title IX determination in federal courts. They merely review the procedures to ensure that the conditions that Congress set are followed. With respect to the Connecticut statute, the Connecticut statute essentially mirrors Title IX in that instance. It's looking at how these cases are handled in universities, and it's saying, stop, we need to make sure that discrimination against women or discrimination against any party is not tolerated, etc. It's imposing requirements, but at the same time, it's not converting these hearings into something that, like an arbitration, can be converted into a binding court judgment, etc. There's no binding legal determination in terms of a Title IX proceeding. So if I can provide an example, Your Honor, if we're going through an arbitration proceeding between employer and employee, whatever the arbitrator decides, if it can survive the procedural attacks, the substantive attacks on the arbitrator's reasoning, etc., becomes a binding court judgment. A Title IX decision by a university panel does not act as a binding judgment in a civil case brought by a lady such as Jane Doe, who asserted a Title IX claim in a university. The Title IX mechanism is strictly an internal university disciplinary process. It carries no weight outside that context, and for that reason, it is fundamentally distinct from the arbitration proceeding or, in the other context, the quasi-judicial immunities that applied in Connecticut to a private actor's decision is in the context of our probate court. When a conservator is appointed and that conservator is acting on behalf of the conserved person, the fundamental difference between the conservator and the Title IX proceeding is the conservator has to seek court, probate court approval for most, if not all, of the decisions that he makes on behalf of the conserved person. Kagan. Well, I think that the Supreme Court said that the conservator was acting as an or the superior court said that the conservator is acting as an agent of the court, which is we wouldn't have in the Title IX context. Correct. But could you address the six-factor test? I mean, if we were to try and predict what the Connecticut court would say, the six-factor test seems to, as your adversary points out, to suggest that this is a quasi-judicial proceeding. And you don't really seem to make an argument that it's not, that there is an exercise of judgment and discretion here. In the proceeding, there's a hearing and determination to ascertain facts and decide. Is this — what is the status of the six-factor test under Connecticut law? My understanding is that six-factor test is still good, but there remains the threshold question of solving whether it can apply to a private actor, as we're arguing here. In terms of the merits, as applied to Mr. Cobb's case here, we would insist that the proceedings have resembled a kangaroo court at this point. He was not afforded the right to counsel in the hearing. He was not even permitted to be in the same room when Jane Doe was telephonically examined by the UWC committee at Yale. In other words — But where do you get that those factors inform Connecticut's decision about a judicial proceeding? I mean, I understand the argument. I'm not denigrating it, but I'm not sure where I see that Connecticut says that they inform a judicial proceeding determination. Well, my understanding of the six-factor — sorry, Your Honor. It's either a civil process or some sliding scale of due process, as the Supreme Court discussed in Matthews v. Aldrich. And — So you're asking us to imply that that has to be a part of it. Correct. And that's also part of the reason why we think this case properly belongs in front of the Connecticut Supreme Court, is these are unresolved, swirling issues that this Court has indeed addressed. It's Title IX jurisprudence, but for purposes of quasi-judicial immunity in this context, have not been addressed under Connecticut law. I have one more question, if I may, Judge Livingston. I'm going to be asking your adversary about this, so I want to ask you, too. In the Connecticut case, before they talk about the six factors, they say that immunity extends to administrative proceedings, so far as they have powers of discretion in applying the law to the facts. Does that suggest that it has to be applying some statute, some law, not just the university standards, or am I missing something? The test itself seems to indicate that they would have to be married to some sort of standard, for lack of a better term. No, now I'm not talking about procedural standards. I'm talking about whether there is an actual law being enforced. I follow you on that point, Your Honor, and I think what the closest we can get to the UWC proceeding is 10A-55M, which does establish a definition of affirmative consent. There's no enforcement mechanism in terms, as far as I can see. Is that being converted into a binding judgment in court, or a court actually would be? Well, on the other hand, Connecticut does require them, if I understand Connecticut law, to have these kind of hearings, or to have a hearing to deal with student sexual harassment claims. So to that extent, is that the law that they are applying to the facts, or not? I would point to my earlier answer that Connecticut was basically saying there's discrimination going on against women in how these cases are being handled, and we're going to make sure that women in all parties get a fair shake here. So in terms of mandating the proceeding and mandating some loose guidelines, yes, they are applying that law, but they're merely complying with what they're required to do. They're not applying actual substantive law from the state that could be converted into a binding court judgment. Thank you. Thank you, Your Honors. Good morning, Your Honors. My name's Jim Sconzell. I'm with Carlton Fields, and I represent JICA. A little louder. It's the mask. I'd like to first comment before I start my argument in chief on this notion that due process isn't grafted on the six factors. That issue, I believe, was addressed in Magnin as well as Payton. In both of those cases, in Magnin it was a unemployment security review case, and in that process, under Connecticut law, there is virtually no due process. It's the submission of a form about a termination, and that's what the squabble was in that case. In Payton, the plaintiff argued, among other things, that the arbitrator didn't have the due process power, and the appellate court quickly made quick work of that and did not focus on that when analyzing the six factors. So I don't believe that the Connecticut courts have engrafted a requirement of due process, so to speak, as I just heard the discussion, into the six factors. But if we look at the six factors alone, they can be satisfied by almost any group that makes a decision. I mean, labor, employment, resolution of disputes, all kinds of things could fit within this. So I would think there has to be something more. I suggested to your adversary that it was discretion in applying the law, not just the institution's standards. What do you say to that? What I say to that is I agree in part, and I would also add that there is also, combined with the six factors, the requirement that there be some public policy at stake that would require the imposition of quasi-judicial immunity. And in this case, as there would be in any university proceeding over a sexual misconduct accusation, there's clearly both Federal and State public policy at issue. So to Your Honor's point, there are a variety of contexts in which quasi-judicial immunity could apply. And I think part of the ---- Sotomayor, but public policy is a lot looser standard than applying law to the facts. So I see where that's stated in Connecticut precedent. I'm not sure I see where just public policy is stated in the precedent. Do you want to point me to something? Well, I'm not disagreeing with Your Honor's original questioning and perhaps point that law might have to be applied to the facts. And I'm agreeing with Attorney Atkinson that in this case that was done in the UWC process. The members of the UWC did apply law. They applied Connecticut law and consent, at least, and Federal law having to do with sexual harassment, for example, was the conduct at issue according to sexual harassment. And Title VII is always used in Title IX proceedings for definitional purposes of what sexual harassment or sexual misconduct might be. So I think that ---- But turning back to the procedural question, is it relevant how the hearing is conducted and what its basic elements are? You say that's not part of the six-factor test. But when I look at the six-factor test as it's used in Kelly and talked about in Craig, first, those six factors don't appear to me to be exclusive if you trace them back. And second, there is extended discussion in Kelly and Craig about the way the hearings are conducted. So in Kelly, the request for revocation was taken under oath, had to be followed with the Secretary of State. At the hearing, the teacher is entitled to counsel, to be present during the hearing, and to cross-examine all witnesses. So it seems like if that sort of thing is not relevant, the Connecticut court does seem to be talking about it in these opinions. So help me out. Your Honor, I didn't say it's not relevant, but I'm merely emphasizing in response to this due process argument that I'm hearing today that that does not turn the question. The issue is, as Your Honor correctly points out, we have six factors. Some of them do not have to be present in every case. And I just pointed out a couple of cases where the hard due process issues, right to cross-examination, recording of the hearing, were not required. But I don't disagree with Your Honor that it's part of the equation. I'm not disagreeing. If I may get back to my argument in chief, I think it's important to note that Judge Dooley was not writing on a blank slate. I'm sorry. I missed that. Judge Dooley was not writing on a blank slate. Thank you. And nor would this Court be. This Court does not have to certify this question in the Connecticut Supreme Court. And it does not in cases where there is information that would lead the Court to determine what the Connecticut Supreme Court may do. And that's exactly what Judge Dooley did, who is – and Judge Dooley is a former trial judge of the Connecticut Superior Court. Judge Dooley applied the six factors that Your Honors have available to them. Judge Dooley looked at, among other things, the Rahm case, which Mr. Atkinson pointed out. And Judge Dooley correctly exercised her discretion to anticipate what the Connecticut Supreme Court or the Connecticut Appellate Court would do under these circumstances. So I think, Your Honors, that you all would have the same prerogative, and I hope you would exercise that prerogative because it's been a long proceeding, and I think both parties would like finality. With that, Your Honors, if you have no further questions. Thank you. Thank you. I have a couple of points, Your Honors. The first thing is you are correct in pointing out that the six-factor test is non-exhaustive, and we think that's dispositive, particularly in this context. If this proceeding is a quasi-judicial proceeding, our argument would be that there's a constitutional requirement, both under Title IX of due process, that was not followed here. This was a quintessential kangaroo court where Mr. Kahn had no opportunity to follow anything remotely close to the procedural protections he received in his criminal trial that were so important to getting his verdict of acquittal in under a few hours. So with that respect, we would think that that's definitely the due process, the procedural protections should factor into that six-factor test. The second point that I want to make is if I can direct Your Honors' attention to the appendix at 177 where we have reproduced Judge Dooley's opinion. Judge Dooley acknowledges that she would be hesitant to alter the landscape of the law in Connecticut without guidance. The only guidance she cites is the Rahm case here. And in the Rahm case, the trial court did not engage in any detailed discussion of why quasi-judicial immunity does apply in the context of a Title IX proceeding at a private university. Our position remains that there is absolutely no guidance under what appears to be an issue of first impression for both Connecticut and in the circuit. And for that reason, we would ask this court to either certify the question or reverse Judge Dooley's grant of the defendant's motion to dismiss. Thank you. May I ask you, your case is still pending against the university, correct? Correct. All right. How does a decision about whether or not this is a judicial proceeding, what, if any, effect does that have on your claim against the university? I think in terms of the context of the Title IX proceeding, if you state as a matter of Connecticut law that this is a quasi-judicial proceeding, I think that has a tremendous bearing on what procedural protection Yale University was obligated to offer here. I think it could have a tremendous import on what I believe will be an ensuing appeal from dispositive motions below should those motions be brought, and depending on the rulings. So we definitely are advancing on Mr. Kahn's behalf a violation of his due process rights in the Title IX proceeding. But just to clarify, if I may, your Honor, those, we believe the Title IX guarantees those due process rights independently of the quasi-judicial determination that you would make here today as well. So I think any, just to sum up, any determination might have a bearing, but there's also an independent ground for our claims under Title IX. I would ask in practical terms whether we rule or whether we send it to the Connecticut Supreme Court for its ruling. The only party right now is the complainant in the case, not the university. And is there any concern that you would be relitigating these questions with respect to the university? Not in the quasi-judicial immunity context. No, no, because they don't have qualified immunity, but you say it would have effect for them in any event. Well, the one place that I could see it popping up, your Honor, is that I believe we have named people who were part of the UWC proceeding. A ruling here would essentially give them, lay the groundwork for them getting absolute immunity as fact finders there. Right, I just asked for informational purposes for down the road. Thank you. No problem. Thank you, your Honor. Thank you both, and we'll take the matter under advisement. That's the last case on the calendar this morning, so I'll ask the clerk to adjourn. Court is adjourned. Thank you.